**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**BANK OF BLUE VALLEY,**

    **Plaintiff,**

    **v.**                                                                              **Case No. 15-9303-CM**

**LASKER KIM & CO. LLP,**

    **Defendant.**

**MEMORANDUM AND ORDER**

Defendant Lasker Kim & Co. LLP moves to dismiss plaintiff Bank of Blue Valley's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or in the alternative, to transfer venue to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).  (Doc. 5.)

**I.      Legal Standard for Motions to Dismiss under Fed. R. Civ. P. 12(b)(2)**

Plaintiff bears the burden of establishing personal jurisdiction over defendant.  *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1011, 1012 (D. Kan. 2006).  When, as here, the court exercises its discretion to decide defendant's pretrial motion to dismiss without conducting an evidentiary hearing, plaintiff need only make a prima facie case.  *Id.*  To do so, plaintiff may establish facts via affidavits or other written materials that, if true, would support personal jurisdiction.  *Id.*  The court considers the allegations in plaintiff's complaint true unless they are controverted.  *Id.*  If plaintiff makes a prima facie showing, it will be considered sufficient even if defendant makes a contrary showing, because all factual disputes, so long as they are supported by documentary evidence, will be resolved in plaintiff's favor.  *Id.*

**II.     Factual Background**

Viewed in the light most favorable to plaintiff, the complaint and the record evidence are summarized as follows:

Plaintiff is a banking corporation organized under the laws of Kansas with its principal place of business located in Overland Park, Kansas. (Doc. 1 at 1.) Defendant is a professional accounting firm organized as a California limited liability partnership with its principal place of business in Culver City, California. (*Id.*) Splashtacular, Inc. ("Splashtacular") was a company based in Paola, Kansas, that manufactured custom water slides for hotels, amusement parks, and municipalities. (*Id.* at 2.) Defendant did accounting work for Splashtacular for several years, including preparing accounting reviews, quarterly statements, (*id.* at 2) and tax returns (Doc. 10-1 at 2). To perform its accounting services, defendant sent and received information and communicated with Splashtacular employees and its Kansas-based lender, Intrust Bank, via telephone, e-mail, and mail. (*Id.* at 2–3.) Among the documents defendant prepared was an accounting review for the year ending December 31, 2012. (*Id.* at 2.) At the time it made this review, defendant knew the report would be relied upon by banks in Kansas when they decided whether to extend Splashtacular credit. (*Id.* at 3.)

Splashtacular began searching for a new lender when Intrust would not extend additional credit. (*Id.* at 4.) Splashtacular approached plaintiff to see if it would assume Splashtacular's debt and extend additional credit. (*Id.*) Defendant received plaintiff's loan proposal from Splashtacular, which stated that in order to make the loan, plaintiff would first need the financial statements issued by defendant. (*Id.*) Defendant knew that plaintiff would rely on its review of Splashtacular's financials, which portrayed Splashtacular as a profitable business. (*Id.*) Plaintiff relied on defendant's review and decided to loan Splashtacular over five million dollars. (*Id.*)

In November 2013, plaintiff hired a new accounting firm, MarksNelson, that determined that at the time plaintiff assumed Splashtacular's debt, Splashtacular was losing money and had a negative net worth. (*Id.* at 6.) Splashtacular admitted it was insolvent in January 2014 and its assets were eventually sold, but it has not repaid its loan to plaintiff. (*Id.*)

Plaintiff brought claims against defendant for negligent misrepresentation and professional negligence. It argues that defendant did not meet applicable professional accounting standards when it prepared the 2012 accounting review for Splashtacular, misrepresenting Splashtacular as a profitable business, and that plaintiff relied on the review when extending Splashtacular a loan on which Splashtacular defaulted, causing plaintiff a loss of over three million dollars. (Doc. 1 at 7–8.)

**III.   Discussion**

Plaintiff argues that the court should exercise specific jurisdiction over defendant because: (1) defendant allegedly committed the torts of negligent misrepresentation and professional negligence in Kansas by negligently preparing financial reports for Splashtacular, knowing that Splashtacular banked exclusively in Kansas and that Kansas banks, including plaintiff, would rely on defendant's financial reports before extending additional financing to Splashtacular; and (2) defendant purposefully availed itself of the benefits of conducting business in Kansas by providing accounting services to Splashtacular in Kansas, and communicating with its representatives through e-mails, mail, and phone calls over a period of years.

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Krier v. Bartram's Equip. Sales & Serv.*, No. 14-1072-MLB, 2014 WL 3092918, at *1 (D. Kan. July 7, 2014) (quoting *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1286–87 (10th Cir. 2007)).

Because the Kansas long-arm statute is liberally construed to permit jurisdiction to the full extent permitted under the United States Constitution, the court will proceed to the constitutional due process analysis. *See Frickey v. Thompson*, 136 F. Supp. 3d 1300, 1307 (D. Kan. 2015); Kan. Stat. Ann. § 60-308(b)(1)(L)–(b)(2).

Analyzing due process is a two-step process. First, the court must find that the defendant has "minimum contacts" with the forum state such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Second, the defendant's contacts must be such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

"Minimum contacts" may be established in two ways: general jurisdiction and specific jurisdiction. Plaintiff argues that the court should assert specific jurisdiction over defendant. In the Tenth Circuit, a court has specific jurisdiction over a nonresident defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The United States Supreme further outlined the reasons and requirements of purposeful availment, stating that it:

> ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. . . . Thus where the defendant . . . has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable

> foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 475–76 (internal citations omitted). In the tort context, the Tenth Circuit has "appli[ed] an effects test, allowing the exercise of jurisdiction when there is a prima facie showing that defendant (1) intentionally acted (2) in a manner expressly aimed at Kansas, with (3) knowledge that the brunt of the injury would be felt in Kansas." *Proud Veterans, LLC v. Ben-Menashe*, No. 12-1126-JAR, 2014 WL 791200, at *6 (D. Kan. Feb. 27, 2014) (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008).

An injury occurring in Kansas as a result of tortious activity outside the state is considered a tortious act within the state for purposes of personal jurisdiction. *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227–28 (D. Kan. 2000) (citing *Taylor v. Phelan*, 912 F.2d 429, 432 (10th Cir. 1990)). "Thus, if the injury attributable to the tortious activity is felt by a Kansas complainant, the nonresident defendant's physical presence within the forum state is not required . . ." *Id.* Here, plaintiff argues that defendant made negligent misrepresentations about Splashtacular's financial status that it knew Kansas banks would rely on.

Plaintiff supports these allegations with affidavits from three individuals: Anita Burdge, Alex Weidman, and Julius Madas. (Docs. 10-1–10-3.) Anita Burdge started working for Splashtacular in 2009 and eventually become controller, dealing with pay applications and collections, accounting, and bookkeeping work. (Doc. 10-1 at 1.) Ms. Burdge affirms that defendant's representatives communicated with her and Splashtacular's Kansas banker, Intrust Bank, about preparing quarterly and year-end financial statements, tax returns (which were often filed in more than thirty states), 1099 forms, and annual reports. (*Id.* at 1– 2.) Attached to her affidavit are examples of correspondence

between defendant's representatives and Splashtacular representatives and e-mails between plaintiff's representatives and Splashtacular representatives.  (Doc. 10-1 at 5–31.)

Alex Weidman was the president of Splashtacular and affirms that after September 2003 the company operated from Paola, Kansas.  (Doc. 10-2 at 1.)  Mr. Weidman states that the company's day-to-day activities including sales (the product show room was located in Paola), project engineering, project management, and meetings all took place in Paola, and nearly all company employees worked at the Paola location as well.  (*Id.*)  Mr. Weidman states that beginning in 2012, Steve Levine, Splashtacular's CEO, began spending increased time in Kansas and that by 2013 he spent nearly all his time in Kansas and rarely returned to California.  (*Id.*)

Julius Madas is the Market President for the Kansas City, Kansas region of Intrust Bank, Splashtacular's lender from 2006 until April 2013.  (Doc. 10-3 at 1.)  Mr. Madas affirms that to his knowledge, Splashtacular was based out of Paola, Kansas.  (*Id.*)  He communicated with Splashtacular representatives and Gustavo Rendon, a partner at defendant's firm, about Splashtacular's accounting.  (*Id.*)

Defendant provided only Gustavo Rendon's affidavit and supporting documents.  (Doc. 6-1.)  Mr. Rendon's affidavit affirms that he prepared accounting reviews and quarterly statements for Splashtacular for several years; that he prepared the Independent Accountant's Review Report for 2012 that is at issue in this case; and that Mr. Rendon communicated with Splashtacular representatives in California and Kansas.  (Doc. 6-1 at 1–3.)  Attached to Mr. Rendon's affidavit are the 2012 review; a copy of Splashtacular's annual reports for 2011–2012 filed with the Kansas Secretary of State's website listing a California address; and the engagement letter for defendant's services, which was sent to a California address.  (Doc. 6-1 at 4–26.)

Resolving any factual disputes in plaintiff's favor, defendant established a regular (at least quarterly) course of dealing with Splashtacular in Kansas over a period of years. Ultimately, plaintiff alleges, defendant negligently produced the 2012 end of year report for Splashtacular that defendant knew would have a potentially devastating impact on plaintiff. It knew that the brunt of the injury caused would be felt in Kansas, because Splashtacular banked exclusively in Kansas. Defendant purposefully directed its activity at residents of Kansas, in the form of accounting services and communications with Kansas-based Splashtacular.

Additionally, plaintiff alleges that had defendant met professional standards of accounting, the parties would have known that Splashtacular had a negative net worth at the time plaintiff was deciding whether to extend Splashtacular a loan. This litigation results from Splashtacular's failure to repay its loan to plaintiff, which injured plaintiff in excess of three million dollars. Even though it is plaintiff rather than Splashtacular suing defendant, the action complained of—negligent accounting— relates to the services defendant provided to a Kansas entity. Defendant knew or should have contemplated that banks would rely on its 2012 review when they considered whether to extend Splashtacular a loan. Defendant is alleged to have purposefully directed its accounting activity at a Kansas resident and there is no dispute that the brunt of the injury caused by defendant's allegedly tortious conduct was felt in Kansas.

Next, the court determines whether exercising personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe*, 326 U.S. at 316). To do so, the court determines whether jurisdiction is reasonable under the circumstances of each case by balancing (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most

efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Defendant's arguments do not weigh so definitely in its favor that the court could find that litigating this case in the District of Kansas is fundamentally unfair. Defendant generally argues that it would be more convenient for it if the case were litigated in California, where defendant's witnesses are located, and it continues to dispute where the relevant action in this case occurred. But one party or the other must endure the inconvenience of litigating out-of-state and defendant has provided no argument beyond the expected inconvenience of litigating out-of-state to suggest fundamental unfairness. The record before the court, with all factual disputes resolved in plaintiff's favor, shows that defendant established a business relationship with Splashtacular in Kansas. That relationship lasted several years and included contacts on at least a quarterly basis. Further, the District of Kansas "generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (1985). And plaintiff provided affidavits suggesting that defendant's allegedly tortious conduct caused injury to plaintiff in Kansas. Plaintiff filed this case in Kansas and has an interest in having this suit, which is based on Kansas law, litigated and resolved in Kansas. Jurisdiction in Kansas does not offend traditional notions of fair play and substantial justice.

### IV. Transfer of Venue

Next, defendant argues that if the court does not dismiss for lack of personal jurisdiction, the case should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a). (Doc. 5.) The court has broad discretion under § 1404(a) to decide motions to transfer. *Frickey v. Thompson*, 136 F. Supp. 3d 1300, 1313 (D. Kan. 2015). The party moving to transfer has the burden

to establish that the current forum is inconvenient. *Id.* (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)). Shifting the burden of litigation from one party to the other is not sufficient to meet this burden. *Id.* (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010)). The Tenth Circuit has set out several factors for district courts to consider in addition to the individualized, case-specific consideration of convenience and fairness in each case, including:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler*, 928 F.2d at 1516.

The extent of defendant's argument to transfer venue in its initial brief is that "in the interest of justice and for the convenience of parties and witnesses" the court should transfer the case to the Central District of California. (Doc. 6 at 11.) In its reply brief, defendant adds that "[p]laintiff BBV complains of actions that occurred in California. Defendant is located in California. Defendant did nothing in Kansas. The witnesses and exhibits required to litigate are located in California." (Doc. 19 at 16.)

Defendant is a California entity, but the record currently before the court does not support defendant's claim that it "did nothing in Kansas." Instead, the record indicates that defendant had substantial contact with Splashtacular and some contact with Intrust Bank in Kansas. Plaintiff points out, and defendant does not dispute, that the only individuals or things located in California are defendant's offices, employees, and records. But potential witnesses for plaintiff, including plaintiff's own representatives, as well as those for the other banking entities involved, the accounting firm that

took over for defendant, and Splashtacular's representatives, are located in Kansas. The court finds defendant's blanket statement that "witnesses and exhibits required to litigate are located in California" disingenuous in light of the fact that the opposing party is located in Kansas, as are several other entities closely tied to this litigation. Plaintiff also disputes that the actions giving rise to this litigation occurred exclusively in California. As discussed above, plaintiff produced affidavits that suggest otherwise.

After considering these factors, the court finds that defendant failed to carry its burden to transfer venue under 28 U.S.C. § 1404(a). Transferring venue would primarily serve to shift the burden of litigating this case out-of-state from defendant to plaintiff, and as stated above, this is not an acceptable justification to transfer venue. Plaintiff filed this case in Kansas, choosing the District of Kansas for the forum. Defendant provided no persuasive argument that the District of Kansas is an inconvenient forum. Therefore, defendant's motion to transfer is denied.

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss, or in the alternative, Motion to Transfer Venue (Doc. 5.) is denied.

Dated July 18, 2016, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**